IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KHAI NGUYEN, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. CIV-25-01204-JD |
| | ) |
| PAMELA BONDI, et al., | ) |
| | ) |
| Respondents. | ) |

**ORDER**

On October 12, 2025, Petitioner Khai Nguyen filed a petition for habeas corpus under 28 U.S.C. § 2241, in which he challenges his continued detention by immigration officials and seeks immediate release. Pet. [Doc. No. 1]. For the reasons stated below, the Court dismisses the petition as premature.

**I.   BACKGROUND**

Mr. Nguyen is a citizen of Vietnam who was ordered removed from the United States on March 3, 1998, following his November 1997 conviction for sexual assault of a child. Pet. ¶ 2; *see also* [Doc. No. 14 at 8; Doc. No. 14-2 at 1, 3–4].[1] Mr. Nguyen did not appeal his order of removal, rendering it final on April 2, 1998, or alternatively, on March 3, 1998, if he waived the appeal. Pet. ¶ 2. Mr. Nguyen alleges that he "remained in [U.S. Immigration and Customs Enforcement ("ICE")] detention for an unknown period of time believed to be about three years." *Id.* ¶ 3. He was subsequently released on an

---

[1] The Court uses CM/ECF page numbering from the top of district court docket filings in this order.

Order of Supervision ("OOS") in approximately 2001. *Id.* Under the OOS, Mr. Nguyen was required to complete regular check-ins with ICE. *Id.* ¶ 5.

On August 5, 2004, Mr. Nguyen was indicted by a Dallas County grand jury with intentionally and knowingly exposing his genitals to a child. [Doc. No. 14 at 8; Doc. No. 14-4 at 1]. On October 27, 2004, he was indicted by a Dallas County grand jury for failing to register as a sex offender. [Doc. No. 14 at 8; Doc. No. 14-4 at 8]. He pled guilty to third-degree felonies of indecency to a child younger than seventeen years of age and failure to register as a sex offender, and on February 23, 2006, he was sentenced to a five-year term of incarceration in the Texas Department of Criminal Justice ("TDCJ"). [Doc. No. 14 at 8–9; Doc. No. 14-4 at 2, 5].

On July 31, 2009, Mr. Nguyen was released from TDCJ and entered ICE custody. [Doc. No. 14 at 9]. On November 19, 2009, he was released on an OOS. *Id.*; *see also* [Doc. No. 14-1 ¶ 5]. On August 26, 2025, officers with ICE Enforcement and Removal Operations ("ERO") arrested and detained Mr. Nguyen at the Dallas ERO Office during his regular check-in. *See* Pet. ¶ 6; *see also* [Doc. No. 14-1 ¶ 6]. Mr. Nguyen has been detained since that time and is currently being housed at the Cimarron Correctional Facility in Cushing, Oklahoma, which is within this judicial district. Pet. ¶ 10; *see also* 28 U.S.C. § 116(c). He challenges his detention as violative of the Constitution and the laws of the United States. Pet. ¶ 25.

II. <u>ANALYSIS</u>

Respondents assert that Mr. Nguyen's habeas petition is premature because, when he filed his petition on October 12, 2025, Mr. Nguyen had been detained for a period

significantly shorter than the presumptively reasonable period under *Zadvydas v. Davis*, 533 U.S. 678 (2001). *See* [Doc. No. 17 at 3]. Mr. Nguyen contends, inter alia, that the clock does not restart each time a nonconsecutive period of detention begins and that the Court should consider the aggregate time he has spent in custody. Pet. ¶ 29; *see also* [Doc. No. 19 at 4–6]. The Court agrees with Respondents.

    A.    **The petition is premature under 8 U.S.C. § 1231 and *Zadvydas*.**

The presumptively reasonable period of six months to effectuate removal stems from both statute and Supreme Court interpretation. Title 8, United States Code, § 1231(a)(1)(A) provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days," beginning usually from the date on which the order of removal becomes final. 8 U.S.C. § 1231(a)(1)(A). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). After that ninety-day period, certain aliens may continue to be detained if they are inadmissible, removable on certain grounds, or considered a danger or flight risk. *Id.* § 1231(a)(6).[2] Section 1231(a)(6) does not include a specific time limit regarding how long that post-removal-period detention may last. Rather, in

---

[2] *See also Zadvydas*, 533 U.S. at 688 ("The post-removal-period detention statute applies to certain categories of aliens who have been ordered removed, namely, inadmissible aliens, criminal aliens, aliens who have violated their nonimmigrant status conditions, and aliens removable for certain national security or foreign relations reasons, as well as any alien 'who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal.'") (quoting 8 U.S.C. § 1231(a)(6)).

*Zadvydas*, the Supreme Court interpreted § 1231(a)(6) to include an implicit temporal limitation of six months.

In *Zadvydas*, the Supreme Court held that although an alien may not be detained indefinitely, the detention of an alien subject to a final order of removal for up to six months is presumptively reasonable in view of the time required to accomplish removal. *See Zadvydas*, 533 U.S. at 699–701. The Supreme Court further held that, after that six-month period, if the alien shows there is "no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

Mr. Nguyen concedes that the Court's analysis is governed by the *Zadvydas* framework. Pet. ¶¶ 72–74. Mr. Nguyen has not been detained more than six months.[3] Although he argues that his detention in the aggregate is more than six months, most courts disfavor aggregation. Instead, most courts have long agreed that "the clock restarts each time an alien subject to a final order of removal is again detained by ICE." *Leybinsky v. U.S. Immigr. & Customs Enf't*, No. 10 Civ. 5137(RA), 2013 WL 132544, at *9 (S.D.N.Y. Jan. 8, 2013) (citing cases), *vacated as moot*, 553 F. App'x 108 (2d Cir. 2014) (unpublished) (directing the district court to dismiss the petition as moot given ICE released the petitioner from custody). *See also Barrios v. Ripa*, No. 1:25-cv-22644-GAYLES, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8, 2025) (citing cases, declining to

---

[3] At the time of the filing of his petition, Mr. Nguyen had been detained forty-seven days. *See* Pet. ¶ 6. He currently has been detained for 127 days as of December 31, 2025, or roughly four months.

aggregate detentions, and concluding that the petitioner's *Zadvydas* claim was premature because he had been detained for a period less than the "presumptively reasonable" six-month period set by the Supreme Court); *Nma v. Ridge*, 286 F. Supp. 2d 469, 476 n.9 (E.D. Pa. 2003) ("It is not clear to the court, nor does the court necessarily agree, that the length of the petitioner's detention should be aggregated to include time he was detained prior to his release on an order of supervision."). Absent Supreme Court or Tenth Circuit precedent applying aggregation to the *Zadvydas* six-month period, the Court declines to apply it here. *Cf. Walker v. Wainwright*, 390 U.S. 335, 336 (1968) ("[T]he great and central office of the writ of habeas corpus is to test the legality of a [petitioner's] current detention.").

Accordingly, Mr. Nguyen's detention under *Zadvydas* remains presumptively reasonable as of this date, and his petition is premature.

> **B.     The Court sees no indication that post-final-removal-order detention is not measured by § 1231 and *Zadvydas* alone.**

While Mr. Nguyen alleges Respondents failed to comply with regulatory provisions before re-detaining him after his release on the OOS—which was the only issue decided by the Report and Recommendation ("R. & R.") [Doc. No. 16][4]—the Court

---

[4] The R. & R. notes that it "does not address [Mr. Nguyen's] remaining arguments as to how the revocation of his release is otherwise unlawful under the APA or *Zadvydas*" and "declines to address [Mr. Nguyen's] request for declaratory judgment as to the legality and nature of his detention under ICE regulations and whether ICE's actions were arbitrary and capricious" because if the R. & R. "is adopted, [it] will moot these requests." [Doc. No. 16 at 13 n.5]. The R. & R.'s use of *United States v. Caceres*, 440 U.S. 741, 752–53 (1979), to justify resolving the case solely on the regulatory question is puzzling. *Caceres* was not a habeas case; rather, it involved a criminal defendant whose conversations were recorded by the Internal Revenue Service in violation of the agency's

does not have any binding precedent that would indicate that type of violation is the sort of constitutional and statutory guarantee protected by the writ of habeas corpus, or how an alleged regulatory violation can purportedly create greater rights to relief than that determined by the Supreme Court in *Zadvydas*.[5] Although plenty of district courts are concluding regulatory violations by Respondents can appropriately be remedied through grants of habeas relief and a petitioner's release from detention, those decisions are not binding precedent. *Cf. Camreta v. Greene*, 563 U.S. 692, 709 n.7 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case.") (quoting 18 *Moore's Federal Practice* § 134.02[1][d] (3d ed. 2011)).

---

own internal regulations. The Supreme Court granted certiorari to decide whether evidence obtained in violation of IRS regulations could be admitted at the criminal trial. *Id.* at 743. It held that "[n]either the Constitution nor any Act of Congress requires that official approval be secured before conversations are overheard or recorded by Government agents," and emphasized that the regulation at issue was not mandated by constitutional or statutory command. *Id.* at 744, 749–50. And because the defendant could not "reasonably contend that he relied on the regulation, or that its breach had any effect on his conduct," the Court concluded that the agency's noncompliance did not implicate the Due Process Clause. *Id.* at 752–53. Thus, *Caceres* rejects the notion that a regulatory violation automatically triggers the protections of the Due Process Clause. The R. & R.'s reliance on a regulatory-violation theory also runs counter to the Supreme Court's reasoning in *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020). In rejecting the petitioner's attempt to use habeas to obtain additional administrative review of his asylum claim, the Court explained that habeas "at its core [is] a remedy for unlawful executive detention" and claims outside this core "may not be pursued through habeas." *Id.* at 119.

[5] In *Zadvydas*, the Supreme Court employed the canon of constitutional avoidance to confine the scope of § 1231(a)(6) to avoid potential due process concerns. 533 U.S. at 690, 699. Thus, the Court may presume that post-final-removal-order detention under § 1231(a)(6) that complies with *Zadvydas* does not violate due process because *Zadvydas* construed the statute to authorize detention only to the extent constitutionally permissible.

Moreover, this basis for habeas relief seems to be assumed rather than carefully examined. *See Pierre v. United States*, 525 F.2d 933, 935–36 (5th Cir. 1976) (explaining that the "sole function" of habeas "is to grant relief from unlawful imprisonment or custody and it cannot be used properly for any other purpose"); *see also Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) (explaining "that the traditional function of the writ is to secure release from illegal custody"); *Thuraissigiam*, 591 U.S. at 119 (explaining that habeas at its core is a remedy for unlawful detention and that claims "outside the 'core' of habeas [i.e., beyond simple release,] may not be pursued through habeas"). Several indicators suggest that a higher court, whether the Supreme Court or the Tenth Circuit, should decide whether the writ covers a regulatory violation such as that alleged by Mr. Nguyen where his statutory and constitutional claim is premature under the principal Supreme Court precedent addressing the lawfulness of detention for aliens with final orders of removal.[6]

This Court takes the view that, as the law currently stands, the writ does not provide the relief requested under these circumstances. Here, Mr. Nguyen contends that ICE failed to follow proper procedures when it re-detained him despite him having an OOS under 8 C.F.R. §§ 241.4 and 241.13. He contends that ICE did not adhere to the regulatory requirements governing written notice, review, and an informal interview. He

---

[6] The Tenth Circuit currently has on appeal a case where the government presents the argument that *Zadvydas* is the sole standard to measure post-final-removal-order detention under § 1231(a)(6). *See Munoz Ramirez v. Bondi, et al.*, No. 25-1263 (10th Cir.) (filed July 8, 2025). *See also Castaneda v. Perry*, 95 F.4th 750, 760 (4th Cir. 2024) (holding *Zadvydas* "provides the sole recourse available to a § 1231 detainee challenging his detention on due process grounds").

asserts, without citing to any authority, that these "errors are not harmless" and that "they are constitutional violations that demand immediate release." [Doc. No. 19 at 10]. As far as this Court is aware, neither the Supreme Court nor the Tenth Circuit has specifically concluded that violations of 8 C.F.R. §§ 241.4 and 241.13 are at the level of the guarantees protected by the habeas corpus writ. *See, e.g.*, *Zadvydas*, 533 U.S. at 724 (Kennedy, J., dissenting) ("Were the INS, in an arbitrary or categorical manner, to deny an alien access to the administrative processes in place to review continued detention, habeas jurisdiction would lie to redress the due process violation caused by the denial of the mandated procedures under 8 C.F.R. § 241.4 (2001).").

Further, under 28 U.S.C. § 2241(c)(3), a district court is only authorized to issue the writ of habeas corpus when the petitioner is "in custody in violation of the Constitution or laws or treaties of the United States."[7] *See Zadvydas*, 533 U.S. at 688 ("[Section] 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to post-removal-period detention."). The Supreme Court has cautioned that habeas relief does not extend to matters that do not bear on the legality of the petitioner's custody. *Thuraissigiam*, 591 U.S. at 107 (examining the scope of the writ of habeas corpus "when the Constitution was drafted and ratified" (citation omitted));

---

[7] The Tenth Circuit's decision in *Montez v. McKinna*, 208 F.3d 862, 865 (10th Cir. 2000), reinforces this narrow understanding of habeas jurisdiction. There, the court held that claims grounded in state law are not cognizable under § 2241 because federal habeas relief is limited to violations of federal constitutional or statutory law. *Montez* thus aligns with *Thuraissigiam* because both emphasize that federal habeas jurisdiction is limited to challenges to custody under federal law and not to collateral complaints about procedures.

*Preiser*, 411 U.S. at 484 (noting it is clear from the language of § 2241(c)(3) and "from the common-law history of the writ, that the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody").

Additionally, in other contexts, appellate courts have determined that regulatory violations do not allow for habeas relief. *See, e.g.*, *Jones v. Cross*, 637 F.3d 841, 846–47 (7th Cir. 2011) (in the context of a § 2241 habeas petition, the court concluded that there were no due process violations where there were delays in following applicable Bureau of Prisons' regulations and any conceivable violation was harmless); *Nabors v. Warden, U.S. Penitentiary*, No. 92-3282, 1993 WL 55940, at *2 (10th Cir. Mar. 1, 1993) (unpublished) (agreeing with the district court that the failure to hold a timely parole revocation hearing was not a basis for habeas relief and citing cases where other circuits had concluded the same).

Finally, even if Respondents failed to comply with the regulations, the Court is not convinced the remedy in a habeas petition for such violations would be release from custody.[8] Mr. Nguyen does not seek compliance with the regulations as part of his habeas

---

[8] To the extent that the failure to provide written notice or an informal interview is a regulatory violation that constitutes a procedural due process violation, the remedy for such violation would not be release from custody but would be for Respondents to comply with the regulations. *See Nabors*, 1993 WL 55940, at *2 (citing *United States v. Miller*, 599 F.2d 249, 251 (8th Cir. 1979) (holding that the only remedy for a failure to hold a timely initial parole hearing is an order to hold such hearing); *Heath v. U.S. Parole Comm'n*, 788 F.2d 85, 89 (2d Cir. 1986) (absent prejudice or bad faith, the remedy for failure to hold a timely parole revocation hearing is only a hearing)); *see also Billiteri v. U.S. Bd. of Parole*, 541 F.2d 938, 944 (2d Cir. 1976) (noting that Congress vested sole authority to grant or deny parole with the Parole Commission).

relief, but rather he seeks immediate release. Pet. ¶¶ 15, 20, 77–79. That the government might not have taken the correct *route* to detention does not mean the *detention* itself is unlawful or that release is the proper remedy.

### III.  CONCLUSION

In the end, this Court is limited to deciding cases and controversies, and a premature action is not yet ready for disposition. *See Royal Canin U.S.A., Inc. v. Wullschleger*, 604 U.S. 22, 26 (2025) (explaining that federal courts "are courts of limited jurisdiction" and are limited by Article III of the Constitution to "cases" and "controversies" (citation omitted)). To prevail on a § 2241 petition, a petitioner must demonstrate that he is held in violation of a federal constitutional or statutory right.[9] Here, if there is no violation of the constitutional or statutory right as determined by *Zadvydas*, how could the violations of the regulations yield a contrary result or a result not compelled by the statute or the Supreme Court? Rather, it is only "[a]fter th[e] 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. This threshold has not been reached.

---

[9] *Compare Nguyen v. Noem*, 797 F. Supp. 3d 651, 664–65 (N.D. Tex. 2025) (concluding that a writ of habeas corpus was not the appropriate remedy to correct regulatory violations of 8 C.F.R. § 241.13, as "[i]t is a mere administrative regulation, not required as the result of the Constitution"); *Bahadorani v. Bondi*, No. CIV-25-1091-PRW, 2025 WL 3048932, at *4 (W.D. Okla. Oct. 31, 2025) (noting that habeas relief "is reserved for errors constitutional in scale" and concluding that petitioner failed to show that the appropriate remedy for ICE's regulatory violations was a writ of habeas corpus).

Having reviewed the entire record, the Court dismisses without prejudice to refiling Mr. Nguyen's habeas petition [Doc. No. 1], denies as moot Mr. Nguyen's emergency motion [Doc. No. 6], and rejects the Report and Recommendation [Doc. No. 16]. A separate judgment will follow.[10]

IT IS SO ORDERED this 31st day of December 2025.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

---

[10] The Tenth Circuit has stated that a certificate of appealability "is not required in order to appeal a final order in a proceeding under 28 U.S.C. § 2241." *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 810 n.1 (10th Cir. 1997) (citing *Bradshaw v. Story*, 86 F.3d 164, 165–66 (10th Cir. 1996)).